88 So.2d 272 (1956)
Emmett MANSON, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida, Division A.
May 23, 1956.
Rehearing Denied July 5, 1956.
Finch & Mosley, Clearwater, for appellant.
Richard W. Ervin, Atty. Gen., and Jack A. Sudduth, Asst. Atty. Gen., for appellee.
THORNAL, Justice.
Appellant Manson seeks reversal of a judgment of conviction entered pursuant to a jury verdict finding him guilty of robbery.
Reversal is sought on the ground that appellant's motion for a separate trial, made prior to the trial, was denied and that this prevented him from having a fair trial within the requirements of due process of law.
Four men, Adams, Rembert, Williams, and the appellant Manson, were informed against jointly for alleged robbery of the Tides Hotel in Pinellas County some time after 1:00 o'clock a.m. on July 6, 1954. Adams, Rembert and Williams were apprehended shortly after the robbery and that night Rembert and Williams gave sworn statements admitting their guilt and implicating Manson who was an employee of the hotel on duty at the time of the robbery. Adams denied participation in the crime but admitted being an occupant of the automobile used in the hold-up while it was in progress
Appellant Manson consistently denied that he was implicated in any way in the robbery. He claimed that he was sleeping in the hotel bellhop room during the early morning hours when someone entered the place, knocked him out and tied him securely. He stated that he remained in a semiconscious condition until the hotel manager aroused him shortly after the robbery, at which time he was found securely tied, with blood flowing from his nose. When found, he was on the floor by a chair from which he could have fallen. The other three defendants all testified that they had gone to the hotel for Rembert to borrow money from Manson. Rembert and Williams stated that Manson told them he did not have any money but that they could make some money easily by robbing the place. According to their version, Manson was the "brains" of the scheme and directed them as to how they should go about the act, including binding him for appearance sake.
*273 Prior to the trial, Manson moved for severance on the ground that his defense was antagonistic to that of Rembert and Williams who had confessed and that their confessions were not admissible against him, but would be admissible against them to his injury in the joint trial. The motion was denied and appellant Manson was required to go to trial with the other three jointly. All pleaded innocent.
At the trial, Rembert and Williams, despite their "not guilty" pleas, took the stand and admitted their guilt and again implicated Manson, under oath from the witness stand. Midway of the trial the State granted immunity to Adams and put him on the stand to testify against the others. This he did. He too implicated Manson.
It is now contended by appellant that certain inconsistencies in the testimony of the codefendants substantially discredits them and that the requirement that he be tried jointly with them resulted in the presentation to the jury of certain evidence including the confessions of Rembert and Williams, as well as other harmful evidence, which resulted in a denial of a fair trial to the appellant. After the verdict, a motion for new trial was presented assigning the same ground and the trial judge denied the motion. Judgment against appellant was accordingly entered and he was sentenced to fifteen years imprisonment.
Although it might be conceded that the trial judge could have found justification for granting the motion for a severance, if in his judgment justice required it, a careful and thorough examination of the record leads us to the conclusion that in denying the motion, he did not abuse the sound judicial discretion allowed him in such matters. Both by statute, Section 918.02, Florida Statutes, F.S.A., and by prior decisions of this court, a motion for severance is addressed to the discretion of the trial judge and his order in the exercise of such discretion will not be disturbed in the absence of a showing that a sound judicial discretion has been abused. See Samuels v. State, 123 Fla. 280, 166 So. 743. Helpful annotations on the subject of motions for severance will be found in State v. Francis, 152 S.C. 17, 149 S.E. 348, 70 A.L.R. 1133; People v. Braune, 363 Ill. 551, 2 N.E.2d 839, 104 A.L.R. 1513; Bennett and Holiman v. State, 201 Ark. 237, 144 S.W.2d 476, 131 A.L.R. 908.
The burden rests upon the appellant to show clearly that the trial judge abused his discretion in entering an order of the nature under attack. See King v. State, Fla. 1950, 47 So.2d 304. While it is true that the confessions of two of the codefendants, made out of the presence of appellant, were admitted into evidence, the trial judge carefully instructed the jury that these confessions could not be considered as evidence of guilt of Manson. There were other instances where certain evidence was offered against the codefendants which was inadmissible against Manson and in each instance the trial judge clearly advised the jury that such evidence could not be considered against the appellant. It should not be overlooked that in addition to the confessions, each of the three codefendants took the witness stand and testified under oath to substantially the same statements that were made in the confessions. Rembert and Williams voluntarily did this and Adams did so under a grant of immunity.
It is, therefore, clear from the record that substantially all of this oral testimony would have been admissible against appellant Manson even if he had been tried separately and the admissible part of it was more than adequate in and of itself to support a conviction, if believed by the jury. While there were some conflicts in the stories told by the various defendants, the court instructed the jury properly on its responsibility to reconcile such conflicts if possible and to evaluate the testimony in the light of the conflicts. The jury was also instructed as to the weight to be given the testimony of alleged accomplices and that such should be considered with great care and caution.
The trial judge had a further opportunity to consider the over-all propriety of the joint trial when he considered the motion *274 for a new trial. Again, in the exercise of his judicial discretion, he concluded that no error had been committed and evidently in his mind appellant had received a fair trial.
Our study of the record leads us to the conclusion that the requirements of due process were observed, that there was no abuse of the sound judicial discretion granted to the trial judge in his denial of the motion for a severance, that by his instructions to the jury during the trial and at the close of all the evidence, he adequately protected the rights of the appellant and that, in the ultimate, the jury had a right to believe the appellant on the one hand, or his co-defendants on the other. They chose to believe the latter. There was proper evidentiary justification for their conclusion and it is not now within our province to hold that they were wrong in the light of the record.
The judgment appealed from is 
Affirmed.
DREW, C.J., and TERRELL and HOBSON, JJ., concur.