840 So.2d 427 (2003)
Otneil Bolanos CALDERON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-1460.
District Court of Appeal of Florida, Second District.
March 21, 2003.
*428 KELLY, Judge.
Otneil Bolanos Calderon appeals the summary denial of his motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Mr. Calderon raised five claims of ineffectiveness of defense counsel. On claims one, two, three, and five, we reverse. We conclude claim four was facially insufficient and affirm the denial of that claim.
Mr. Calderon was indicted for one count of premeditated first-degree murder and two counts of attempted first-degree murder with a firearm. In 1999, a jury found him guilty as charged of first-degree murder. It returned verdicts of attempted second-degree murder on the remaining two charges.
In his rule 3.850 motion, Mr. Calderon first claimed that his counsel was ineffective for failing to advise him that he needed to testify in order to have sufficient evidence to allow a jury instruction on selfdefense. Mr. Calderon alleged that the victims began a fight and wielded a gun and a knife. He claimed that as the victims rushed him he feared for his life and had to defend himself. Although the defense requested an instruction on self-defense, none was allowed because the court found the evidence supporting such an instruction too speculative.
In denying Mr. Calderon's 3.850 claim, the trial court failed to provide record attachments to refute the claim. Instead, it found there was a colloquy that showed Mr. Calderon waived his right to testify. That colloquy, however, does not address whether defense counsel advised Mr. Calderon about the need to testify in order to gain or ensure an instruction on self-defense. Therefore, we reverse. On remand, the trial court may again deny Mr. Calderon's claim if his allegation is conclusively refuted by record attachments. If it cannot be refuted by record attachments, then Mr. Calderon must be afforded an evidentiary hearing. See Lenoir v. State, 741 So.2d 1148 (Fla. 2d DCA 1999).
Next, Mr. Calderon claimed his defense counsel was ineffective for failing to definitively establish the sequence in which the shootings took place and failing to ask a key question, "Who was shot first?" At trial, the State had asserted that Mr. Calderon shot the decedent first in retaliation for an earlier altercation between the decedent and one of Mr. Calderon's friends. Mr. Calderon's motion refers to conflicting testimony of various witnesses that indicates the decedent was not shot first, which would be consistent with Calderon's claim that he acted in self-defense when a fight suddenly broke out between him and *429 the three victims. In rejecting this claim, the trial court stated Mr. Calderon could not have been prejudiced because it was clear Mr. Calderon acted with a premeditated design to kill all three victims. The trial court did not provide record attachments refuting Mr. Calderon's claim.
Mr. Calderon was convicted of two counts of attempted second-degree murder for two of the victims. Implicit in this verdict is the jury's determination that those attempts were not premeditated. If the defense had definitively established that the deceased victim was not the first one shot, it would have negated the State's version of how the shooting occurred, and the jury may well have found that this shooting was not premeditated. Accordingly, the record does not support the trial court's determination that Mr. Calderon failed to demonstrate how he was prejudiced. On remand, if the trial court again determines that the claim should be summarily denied, it should attach the portions of the record that demonstrate conclusively that Mr. Calderon is not entitled to relief. Otherwise, it should conduct an evidentiary hearing. See Armstrong v. State, 806 So.2d 547, 548 (Fla. 2d DCA 2001).
In his third claim, Mr. Calderon asserted defense counsel was ineffective for failing to ask a key State witness, whose credibility was critical, about his past criminal record. Mr. Calderon asserted that the witness had an extensive criminal history and he advised his attorney of the matter. The portion of the record attached by the trial court to refute the claim does not do so. It merely reflects the witness was questioned about whether he had pending charges. Because the trial court did not refute the claim, we reverse for an evidentiary hearing. See Rachel v. State, 780 So.2d 192 (Fla. 2d DCA 2001).
The fifth claim asserts defense counsel was ineffective because he failed to object to the prosecutor's prejudicial statements in closing argument, which vouched for the credibility of State witnesses and urged to the jury that a gang-related assassination had occurred. The trial court found the remarks were proper comments on the evidence. We disagree. See Gomez v. State, 751 So.2d 630, 632 (Fla. 3d DCA 1999) (holding that the prosecutor improperly weighed in with her own opinion of the credibility of witnesses, and the impropriety was compounded by other improper arguments including that the defendant was a gang leader who had dealt with guns). The record attachments to the trial court's order do not conclusively refute the claim regarding the failure to object to improper closing argument. Therefore, we reverse for the trial court to attach the portions of the record that demonstrate conclusively that Mr. Calderon is not entitled to relief. Otherwise it should conduct an evidentiary hearing. See Perry v. State, 787 So.2d 67, 68 (Fla. 2d DCA 2001); Rachel, 780 So.2d at 193-94. This alleged error, when placed in context with Mr. Calderon's other unrefuted claims, could very well have affected the outcome of the case.
In his remaining claim, Mr. Calderon seeks a new trial because his defense counsel was ineffective for failing to inform the court and law enforcement that he was a foreign national. Mr. Calderon claims that had defense counsel done so, the court or law enforcement would have been required to advise him that he had the right to consult with a consular or diplomatic officer of his country under Article 36 of the Vienna Convention on Consular Relations (Vienna Convention). Mr. Calderon alleged he came to this country from Cuba as an adult and his understanding of United States law and court procedure was limited. He alleged that had he been able *430 to speak to a consular officer, he would have been more fully informed of the differences between Cuban law and Florida law and would have learned he could have gone against his defense counsel's advice not to testify in his own behalf.
We find Mr. Calderon's claim to be facially insufficient.[1] Mr. Calderon did not allege how long he had been in the United States, what his ties to Cuba were other than technical citizenship, the level of his education and experience, his language skills or lack thereof, his prior contacts with the court systems in either Cuba or the United States, or any further information that would support a claim he did not understand the nature of the proceedings or his rights. He makes no allegation that his counsel failed to educate himself on Mr. Calderon's status as a foreign national, only that his counsel failed to inform the court and law enforcement that he was a foreign national. He does not articulate particular facts showing that had he been notified of his right to speak to a consular officer he would have done so or that there was a likelihood the contact with the consul would have resulted in assistance to him. See generally Breard v. Greene, 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) (stating the Vienna Convention arguably confers on an individual the right to consular assistance following arrest, but holding that Breard's claim was procedurally barred and that any showing of prejudice was doubtful); U.S. v. Rangel-Gonzales, 617 F.2d 529 (9th Cir.1980) (holding, in the context of deportation proceedings, that to establish prejudice an alien must show that he did not know of his right to consult with consular officials, that he would have availed himself of that right had he known of it, and that there was a likelihood that the contact would have resulted in assistance to him).
Mr. Calderon's assertions are merely conclusory and are facially insufficient to establish a claim of ineffective assistance under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We therefore affirm the denial of the claim.
Affirmed in part, reversed in part, and remanded.
SILBERMAN and COVINGTON, JJ., Concur.
NOTES
[1] The trial court disposed of this claim by stating Mr. Calderon did not have standing to assert a violation of the Vienna Convention. The issue of a criminal defendant's standing to assert a violation of the Vienna Convention is frequently raised as an issue when a defendant seeks a judicial remedy, such as suppression of evidence or dismissal of an indictment, for an alleged violation of the treaty. However, Mr. Calderon is not asserting a violation of the treaty. He is arguing that because his attorney did not inform law enforcement or the court of his status, they in turn were never obligated to advise him of his rights under the Convention. A defendant of course has standing to assert a claim of ineffective assistance of counsel for failure to investigate facts, circumstances, pleadings, and laws in a particular case, including laws affecting the rights of foreign nationals.