980 So.2d 517 (2007)
Daniel TREVINO, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-5596.
District Court of Appeal of Florida, Second District.
October 10, 2007.
*518 Kevin T. Beck of Cohen, Jayson & Foster, P.A., Tampa, for Appellant.
CASANUEVA, Judge.
Daniel Trevino appeals from the summary denial of his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Mr. Trevino's motion raised several claims, two of which related to prosecutorial misconduct and counsel's failure to object to improper comment in closing argument. We affirm the summary denial of those claims without comment. However, we reverse and remand for an evidentiary hearing on two of Mr. Trevino's facially sufficient claims that are not conclusively refuted by the attachments to the postconviction court's order. "First, Mr. Trevino alleged that his counsel was ineffective for failing to photograph his physical injuries. The photographs would have constituted documentary evidence that would have bolstered his only defense: self-defense." Second, because Mr. Trevino's counsel was a witness to those injuries shortly after they were inflicted, he should have advised his client to obtain a new lawyer so that he could provide exculpatory testimony at trial.
After a jury trial on a charge of attempted first-degree murder, Mr. Trevino was convicted of attempted second-degree murder with a deadly weapon (a knife) and was sentenced to thirty years in prison. After his direct appeal was affirmed, he filed a timely motion for postconviction relief seeking vacation of his judgment and sentence and remand for a new trial.
The crime with which Mr. Trevino was charged arose out of a sexual assignation. *519 Mr. Trevino met the victim, Ms. Hollon, at a bar one evening. They agreed to go to Ms. Hollon's home, where they had sex in her bedroom. Ms. Hollon stated that Mr. Trevino asked her for her phone number and while she was writing it down, he cut her throat with a knife. When she got up, he started stabbing at her. She ran down the hallway to escape, but the door would not open. Eventually, however, she opened the door and ran out.
Mr. Trevino presented a significantly different version of events. He stated that after having sex with Ms. Hollon, he got up, got dressed, told her that he did not want her phone number, and attempted to leave. Ms. Hollon, a transgendered woman several inches taller than Mr. Trevino who outweighed him by fifty pounds, straddled him and pinned him to the bed. He shoved her off of him and stood up. She then tried to block his exit. Mr. Trevino, believing that she had gone crazy and fearing for his life, pulled a knife from his pocket and began flailing it in her direction. He got out of the bedroom, left Ms. Hollon's home, went to his own home, and fell asleep.
At trial, Mr. Trevino attempted to demonstrate that he acted in self-defense. In his postconviction motion, he claims that he was severely hampered in convincing the jury of his position because of his trial counsel's actions. Specifically, Mr. Trevino alleges that on the day after the incident, Mr. Trevino was visited by law enforcement officers who questioned him about Ms. Hollon. He then went to counsel's office seeking representation. While in his attorney's office, Mr. Trevino showed his trial counsel the bruises and injuries he sustained during the struggle the previous evening. However, trial counsel failed to have any photographs taken to document the extent of the injuries. Instead, nine days later, trial counsel's investigator visited Mr. Trevino and took photographs of injuries that were no longer fresh. The bruises had started to heal and did not reflect the severity of his injuries. This omission, Mr. Trevino claims, severely prejudiced the effectiveness of his self-defense claim and led to a conviction rather than a not guilty verdict.
To compound the problem, Mr. Trevino alleges, his trial counsel specifically told Mr. Trevino not to discuss his injuries or any aspect of the altercation unless he was present. In addition, counsel failed to inform Mr. Trevino that he was an exculpatory witness who could testify in his behalf at trial, provided that Mr. Trevino obtained new trial counsel.
The postconviction court summarily denied Mr. Trevino's claims concerning his injuries based on the State's response that evidence of the injuries would not have been admissible. The State explained that trial counsel, with Mr. Trevino's consent, entered a stipulation with the State at trial to exclude all information concerning the defendant's alleged injuries because the State was prepared to present a rebuttal witness should his injuries be mentioned. As evidence of Mr. Trevino's injuries was inadmissible, Mr. Trevino could not be deemed to have been prejudiced by counsel's failure to produce such evidence.
On appeal, Mr. Trevino's appellate counsel persuasively argues that the postconviction court erred in denying the motion based on alleged lack of admissibility of photographs or discussion about the injuries. Absent the stipulation, the photographs would have been admissible as relevant evidence tending to prove a material issue  Mr. Trevino's claim of self-defense. See Waggoner v. State, 800 So.2d 684 (Fla. 5th DCA 2001). The State's potential rebuttal evidence consisted of the testimony of the nurse at the Hillsborough County Jail who allegedly would state that *520 Mr. Trevino did not advise her that the injuries she saw when he was admitted were the result of Ms. Hollon's assault upon him. Mr. Trevino's failure to explain the source of his injuries to the jail nurse was the direct result of his counsel's advice not to talk about his injuries unless he was present. Thus, trial counsel's failure to take the initial photographs, together with the advice he gave his client not to discuss the injuries, set Mr. Trevino's self-defense claim up for failure. If trial counsel had adequately documented the injuries, he could have potentially avoided any impeachment of his client through the testimony of the jail nurse; the stipulation would not have been necessary; and the photographs would have been admissible.
Rather than having the ability to focus upon the injuries he sustained in self-defense, Mr. Trevino was forced to observe the prosecution make the victim's injuries a feature of the trial. Mr. Trevino claims that the missing photographic evidence and testimony of his counsel who witnessed the injuries while they were fresh would have bolstered other exculpatory evidence presented at trial, such as the location of the bloodstains.
To state a facially sufficient claim of ineffective assistance of counsel, a defendant must demonstrate that a specific omission of counsel was "a substantial and serious deficiency measurably below that of competent counsel." Knight v. State, 394 So.2d 997, 1001 (Fla.1981). In addition, the defendant must demonstrate that but for "counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel's failure to investigate witnesses or physical evidence that could cast doubt on the defendant's guilt can constitute deficient performance. Id. at 691, 104 S.Ct. 2052.
"`[W]here no evidentiary hearing is held below, we must accept the defendant's factual allegations to the extent they are not refuted by the record.'" Foster v. State, 810 So.2d 910, 914 (Fla.2002) (quoting Peede v. State, 748 So.2d 253, 257 (Fla.1999)). Here, Mr. Trevino's allegations that his trial counsel's substantial omissions negated his self-defense claim and deprived him of a fair trial are facially sufficient. Because the record does not conclusively demonstrate that Mr. Trevino is entitled to no relief, we reverse and remand for an evidentiary hearing. See McLin v. State, 827 So.2d 948, 954 (Fla. 2002).
Reversed and remanded for an evidentiary hearing.
SILBERMAN and VILLANTI, JJ., Concur.